IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LILLIE O. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CIV-13-617-F |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her applications for disability benefits in August 2011 and October 2011 and alleged that she became disabled on July 31, 2008, due to obesity, migraine headaches, a right knee injury, "memory problems," agoraphobia, panic attacks, depression, anxiety,

1

"anger issues," and "problems with both elbows and shoulders." (TR 259). She was receiving unemployment compensation at the time she filed her applications and continued to receive unemployment benefits until approximately November 2012. (TR 148-149).

At a hearing conducted on September 18, 2012, before Administrative Law Judge Shepherd ("ALJ"), Plaintiff testified that she was 5'1" and weighed 240 pounds, that she was using a walker prescribed by "Dr. Ernestine Olson" two weeks earlier because she was "continuously" slipping and falling and her "right knee gives out." (TR 39, 41). Plaintiff described an eighth grade education and previous work as a detention officer and fast food assistant manager. She also described two previous injuries to her right knee in which she "crushed the patella" and stated that she had constant pain in her knees radiating up to her right hip.

Plaintiff testified she suffered 3 to 4 migraine headaches per week despite taking daily injections of migraine medication. She stated the medication was helpful in reducing the frequency of her headaches. She used nebulizer and inhalant medications for asthma, and she had arthritis in her non-dominant right shoulder and right elbow that was not constant but caused occasional pain dependent on the weather and use.

Plaintiff alleged that she was previously treated at a mental health clinic but had stopped the treatment because she could not "deal with the people and the traffic." Plaintiff stated that she took anti-anxiety medication prescribed for anxiety and agoraphobia and that the medication caused fatigue. Plaintiff estimated she could stand for 10 to 15 minutes, sit for 30 minutes at a time, lift a gallon of milk, and she could not squat or bend over.

2

Plaintiff submitted medical evidence reflecting numerous visits to hospital emergency rooms for treatment of migraine headaches and other conditions. The medical record also contains office notes of treatment of Plaintiff by Ms. Ernestine Olson, a registered nurse practitioner, between January 2012 and December 2012. There is a record of treatment of Plaintiff at the Jim Taliaferro Community Mental Health Center in June 2011 and a diagnostic assessment by Dr. George Strickland at this clinic in June 2011 of mood disorder NOS, panic disorder with agoraphobia, and nicotine dependence. (TR 472). There is no record of intervening treatment of Plaintiff at the clinic until August 2012, when she was seen by a counselor and reported no mood abnormalities. (TR 706). Plaintiff's treatment at the clinic apparently ended a month later when she reported several family-related issues to a case manager, presented a form to the case manager to complete for her disability case, and, when the case manager refused to complete the form, stated she did not need to return for treatment. (TR 702).

Plaintiff underwent a consultative psychological evaluation conducted by Dr. Danaher in June 2011. (TR 465-470). Dr. Danaher noted a diagnostic assessment of moderate depressive disorder, recurrent, moderate to severe, post-traumatic stress disorder, and possible learning disability NOS. (TR 470). Dr. Danaher also noted that based on his evaluation Plaintiff would have a "fair" ability to understand, remember and carry out simple and complex instructions in a work-related environment. (TR 470).

Plaintiff underwent a consultative physical examination conducted by Dr. DeLaughter in June 2011. (TR 456-462). Dr. DeLaughter noted a diagnostic assessment of right patella

3

injuries, migrain headaches, panic attacks with agoraphobia, right knee arthritis, asthma, and right lateral epicondylitis. (TR 468). Dr. Delaughter further noted Plaintiff exhibited "less than optimal effort" during the examination.

In a decision entered October 22, 2012, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 31, 2008. (TR 17). Following the agency's well-established sequential evaluation procedure, the ALJ found at step two that Plaintiff had severe impairments due to obesity, migraine headaches, back disorder, osteoarthritis, hypertension, moderate depressive disorder, panic attacks with agoraphobia, and post-traumatic stress disorder. (TR 18). The ALJ found, based on reasons stated in the decision, that Plaintiff's asthma was not a severe impairment.

At step three, the ALJ found that Plaintiff's impairments were not of the severity to meet or equal the requirements of a listed impairment. At step four, the ALJ extensively summarized the medical evidence and found that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level with limitations of no more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing ramps or stairs and no ladder, rope, or scaffold climbing. The ALJ found that Plaintiff could "understand, remember, and carry out simple, routine, and repetitive tasks. [She] can respond appropriately to supervisors, co-workers, and usual situations, but have [only] occasional contact with the general public." (TR 21).

Based on this RFC and Plaintiff's vocational characteristics, the ALJ found that Plaintiff was not able to perform her previous jobs. However, relying on the VE's testimony

at the administrative hearing, the ALJ found that there are jobs available in the economy which Plaintiff can perform, including the jobs of assembly line worker, laundry aide worker, and photocopy machine operator. Based on these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. RFC Assessment and Credibility

Plaintiff contends that the ALJ failed to properly analyze her RFC because the ALJ

did not address Plaintiff's asthma, obesity, migraine headaches, or hypertension and determine the impact these impairments had on Plaintiff's ability to work. Plaintiff also contends that the ALJ's credibility determination was faulty. Defendant Commissioner responds that the ALJ's RFC assessment appropriately addressed and accounted for the limitations with respect to these impairments that were supported by the medical evidence. Further, the Commissioner asserts that the ALJ's credibility determination was well supported by the record.

The agency's regulations provide that in assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether those impairments are found to be severe or not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(1). The ALJ may not "simply rely on his finding of non-severity as a substitute for a proper RFC analysis." Wells v. Colvin, 727 F.3d 1061, 1065 (10th Cir. 2013). Rather, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (1996).

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." SSR 96-7p, 1996 WL 374186, at *1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). But an ALJ must "consider the

entire case record and give specific reasons for the weight given to the individual's statements" in determining a claimant's credibility. SSR 96-7p, 1996 WL 374186, at *4 (1996). Credibility findings must, however, "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

     The ALJ's decision includes a well-supported rationale for the finding that Plaintiff's asthma did not constitute a severe impairment and did not impose additional limitations upon her ability to work. (TR 18). This finding obviated the need for the ALJ to further analyze Plaintiff's asthma impairment at step four. Wells, 727 F.3d at 1065 n. 3 ("An ALJ could, of course, find at step two that a medically determinable impairment posed *no* restriction on the claimant's work activities. . . . Such a finding would obviate the need for further analysis at step four."). Furthermore, Plaintiff does not suggest that there is probative medical evidence in the record with respect to her asthma impairment that was not expressly considered by the ALJ. A diagnosis alone is not sufficient to establish a severe impairment. See Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997)(claimant must show more than mere presence of condition or ailment to satisfy step two's requirement of a severe impairment).

     As the ALJ found in the decision, the medical evidence reflects that Plaintiff's asthma was treated with medications, and the medical evidence does not reflect persistent records of treatment for asthma symptoms indicating that the impairment was not effectively treated with medications. Accordingly, no error occurred with respect to the ALJ's consideration of Plaintiff's asthma impairment.

The ALJ recognized in the decision that Plaintiff had a severe impairment due to obesity. The ALJ found that Plaintiff's body mass index was 45.3, which placed her at level III obesity. (TR 19). The ALJ indicated that the effects of Plaintiff's obesity had been considered in determining her RFC and in determining whether plaintiff's condition met or equaled the requirements of a listed impairment. The ALJ's decision includes a lengthy discussion of relevant medical evidence with respect to Plaintiff's migraine headaches, right knee injuries, and other conditions. The ALJ appropriately noted that Plaintiff weighed 279 pounds at the time of her consultative physical examination by Dr. DeLaughter and also noted the physician's findings that Plaintiff exhibited normal ranges of motion, stable movement, no motor or sensory deficits, and walked with a stable gait at an appropriate speed without using an assistive device. The ALJ also noted physical examination findings reported by Ms. Olson, Plaintiff's treating registered nurse practitioner, in January 2012, February 2012, July 2012, and September 2012.

No treating or examining physician or medical professional found that Plaintiff's obesity imposed additional limitations beyond those found by the ALJ in the RFC assessment. Plaintiff does not suggest there is any medical evidence reflecting that her obesity would impose additional work-related limitations beyond those found by the ALJ in the RFC assessment. Consequently, the ALJ did not err by failing to discuss Plaintiff's obesity at step four.

The ALJ's step four decisionmaking, as reflected in the decision, reflects that the ALJ considered the medical records showing that Plaintiff had been treated "on numerous

occasions at multiple facilities for complaints of headache[s]" and that "[b]etween July 23, 2006, and June 14, 2011, the claimant was seen for complaints of headaches at twenty-two emergency room visits." (TR 22). The ALJ's decision reflects consideration of the office notes of Ms. Olson with respect to her treatment of Plaintiff for migraine headaches and other medical issues and Plaintiff's multiple reports to Ms. Olson that her headaches were improved.[1]

Plaintiff points to her hearing testimony that despite regular preventative medication she was still experiencing multiple migraine headaches per week. However, the ALJ gave several reasons in the decision for finding that Plaintiff's testimony of severe, disabling pain and limitations was not credible. In this case, the ALJ considered several relevant factors in evaluating Plaintiff's credibility, including her daily activities, medications, extensiveness of her medical treatment, and the consistency of her testimony with objective medical evidence. See SSR 96-7p, 1996 WL 374186, at *3 (setting forth relevant factors in credibility analysis); Hamlin v. Barnhart, 365 F.3d 1208, 1220 (10th Cir. 2004)(stating ALJs "should consider" factors set forth in SSR 96-7p); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

In the decision, the ALJ pointed to specific inconsistencies between Plaintiff's testimony and her statements to treating/examining professionals. The ALJ also reasoned

---

[1]The record reflects that in October and again in November 2012, Plaintiff reported to Ms. Olson that her headaches were "better" (TR 710, 712), and in December 2012, Ms. Olson noted that Plaintiff reported "improved control" of her headaches. (TR 714).

9

that Plaintiff indicated on multiple occasions that she could not afford medications and medical treatment or afford to travel for mental health treatment but she could afford to continue smoking and she stated she engaged in various daily activities. Further, the ALJ reasoned that Plaintiff received unemployment benefits during a portion of the time that she alleged she was disabled, and that the objective medical evidence showed she did not exhibit joint movement or ambulatory limitations and or other findings consistent with disabling pain or other limitations. These reasons are well supported by the record.

Plaintiff contends that the RFC assessment should have included a limitation "concerning absenteeism." Plaintiff's Opening Brief, at 12. However, there is no medical evidence in the record that Plaintiff's migraine headaches would cause her to be absent from work on a regular basis. As the ALJ pointed out in the decision, after she began receiving preventative medical treatment for her migraine headaches with her treating medical professional, Ms. Olson, Plaintiff reported that her headaches had improved, and she did not complain of frequently recurring headaches. The ALJ did not err in failing to impose additional limitations upon Plaintiff's RFC for work due to her migraine impairment.

Plaintiff contends that the ALJ should have included limitations in the RFC assessment for Plaintiff's hypertension. However, the record shows that Plaintiff was first prescribed medication for hypertension in January 2012 (TR 668-669), and nothing in the record indicates that her hypertension was not controlled with medication. There is certainly no medical evidence in the record to show the existence of functional limitations related to hypertension beyond those set forth in the ALJ's RFC assessment, and the Plaintiff does not

point to any such evidence.

Further, the ALJ's RFC assessment is consistent with or more restrictive than the opinions of the agency's medical consultants. Dr. Rodgers, M.D., opined in August 2011 that Plaintiff's physical impairments were not severe. (TR 528). Plaintiff complains that one medical consultant, Dr. Varghese, M.D., stated that she "cannot relate to others on a superficial work basis" in an RFC assessment and that the ALJ's RFC assessment should have included this finding. (TR 512). Dr. Varghese stated in a mental RFC assessment dated August 2, 2011, that Plaintiff "can perform simple and some complex tasks," Plaintiff "cannot relate to others on a superficial work basis," and Plaintiff "can adapt to a work situation." (TR 512).

The ALJ considered Dr. Varghese's mental RFC assessment and reasoned that, when considered in the context of Dr. Varghese's specific findings in the RFC assessment that Plaintiff's mental impairments had resulted in only "moderate" functional limitations, the statement reflected only a "scrivener's error" and should have read that Plaintiff "can relate to others on a superficial work basis." (TR 30).

The VE testified that a finding that an individual "cannot relate to others on a superficial work basis" would indicate disability. (TR 73). But nothing in the RFC assessment indicates that Dr. Varghese determined Plaintiff was disabled. Dr. Varghese opined earlier in the RFC assessment that Plaintiff's ability to interact appropriately with the general public was moderately limited and that she was not significantly limited in her ability to "accept instructions and respond appropriately to criticism from supervisors" and "get

along with coworkers or peers without distracting them or exhibiting behavioral extremes." (TR 511). Thus, the statement that Plaintiff "cannot relate to others on a superficial basis" obviously conflicts with the previous findings set forth in the physician's RFC assessment.

The ALJ's finding that Dr. Varghese's RFC assessment contained an unintentional transcription error is supported by the record. Hence, the ALJ did not err by failing to include in the RFC assessment a limitation regarding an inability to relate to others on a superficial work basis or in giving substantial weight to Dr. Varghese's mental RFC assessment.

Consistent with Dr. Varghese's mental RFC assessment, the ALJ determined that Plaintiff should not have more than occasional contact with the general public but that she could respond appropriately to supervisors, co-workers, and usual situations, and had the ability to understand, remember, and carry out simple, routine, and repetitive tasks. (TR 21). There is substantial evidence in the record to support this RFC finding with respect to mental limitations. Plaintiff only briefly sought mental health treatment for one month in June 2011 and for approximately two months in 2012, and no treating or examining mental health provider opined that she was disabled or limited by mental impairments.

The ALJ's step five determination is supported by the VE's testimony that an individual with Plaintiff's RFC for work could perform jobs available in the economy. Consequently, the Commissioner's final decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter

AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before        August 7th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this      18th      day of             July , 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE